IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EDSON ARNEAULT, et al.,

Plaintiffs,

v.

DIAMONDHEAD CASINO CORPORATION,

Defendant.

C.A. No. 16-989 (MN)

**MEMORANDUM OPINION**

Deborah A. Vitale, Alexandria, VA – Pro Se Movant

Jonathan M. Stemerman, ARMSTRONG TEASDALE LLP, Wilmington, DE – Attorney for Plaintiffs

Bradford J. Sandler, Peter J. Keane, Edward A. Corma, PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE – Attorney for George L. Miller, Chapter 7 Trustee

September 25, 2026
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Deborah Vitale has filed a motion (D.I. 79) ("the Motion to Vacate") seeking to reopen this action ("the 2016 Action"), vacate a consent judgment entered by this Court on September 20, 2023 (D.I. 75) ("the Consent Judgment"), and dismiss the proceeding for lack of jurisdiction. Ms. Vitale, who previously served as President, Chief Executive Officer, Secretary, Treasurer, and Chief Financial Officer of Diamondhead Casino Corp. ("Diamondhead"), filed the Motion to Vacate in connection with Diamondhead's chapter 7 bankruptcy case, which is currently pending in the Bankruptcy Court.[1]

Prior to the chapter 7 case, the Consent Judgment was entered on consent of parties to enforce instruments memorializing loans made by certain lenders (together, "the Plaintiffs")[2] to Diamondhead. When payment was not made in accordance with the Consent Judgment, Plaintiffs filed an involuntary petition against Diamondhead. Over Ms. Vitale's objection, the Bankruptcy Court entered an order for relief on July 31, 2025 (Bankr. D.I. 45) ("the Order for Relief") for the reasons set forth in the Bankruptcy Court's accompanying opinion, *In re Diamondhead Casino Corp*., 2025 WL 2169864 (Bankr. D. Del. 2025) ("the Opinion"). The following day, a chapter 7 trustee was appointed. In the following weeks, an attorney not retained or authorized by the chapter 7 trustee purported to file on behalf of Diamondhead various appeals and motions, seeking to vacate, alter, amend, or stay the Order for Relief. Those motions, which were joined and supported by Ms. Vitale, were denied.

---

[1] The docket of the chapter 7 case, captioned *In re Diamondhead Casino Corp*., No. 24-11354 (JKS), is cited herein as "Bankr. D.I. __."

[2] Plaintiffs are Edson Arneault, Kathleen and James Devlin, J. Steven Emerson, Emerson Partners, J. Steven Emerson as Successor to J. Steven Emerson Roth IRA, John Hawley as Servicing Agent for Argonaut 2000 Partners, L.P., Steven Rothstein, and Barry and Irene Stark.

On November 12, 2025, Ms. Vitale, in her personal capacity, filed the Motion to Vacate the Consent Order on the basis that this Court lacked diversity jurisdiction over the 2016 Action and therefore the Consent Judgment must be vacated. The Chapter 7 Trustee has moved to strike (D.I. 83) ("the Motion to Strike") the Motion to Vacate on the basis that Ms. Vitale lacks authority to seek such relief on behalf of Diamondhead and lacks standing, as a creditor and equity holder, to assert any rights, interests, and causes of action to challenge the Consent Order, which belong to the estate. The Motion to Vacate is fully briefed (D.I. 80, 84, 89); the Motion to Strike is fully briefed as well (D.I. 83, 90, 91). For the reasons set forth herein, the Court will grant the Motion to Strike and deny the Motion to Vacate.

## I. BACKGROUND

### A. The Debtor, MGC, and the Property

Diamondhead has had no operations since 2000. Diamondhead is a holding company whose most valuable asset is its interest in its wholly owned subsidiary, Mississippi Gaming Corporation ("MGC"). MGC owns approximately 400 acres of undeveloped land located in Diamondhead, Mississippi ("the Property"). On August 21, 2014, the Mississippi Gaming Commission granted approval to MGC for a 50-acre gaming site on a portion of the Property. For over 20 years, Diamondhead and Ms. Vitale have sought to develop or sell the Property, and/or pursue a joint venture or financing for the development of the Property, without success. As of the Petition Date there were 21 liens on the Property totaling approximately $8.5 million.

### B. The Debentures, the 2019 Settlement Agreement, and the 2023 Consent Judgment

To raise capital to pay on-going costs and expenses, Diamondhead borrowed from various individuals and entities. The Plaintiffs are each holders of collateralized convertible senior debentures (collectively, "the Debentures") memorializing the terms of the loans made to Diamondhead in 2014. (D.I. 1 ¶¶ 13-15). The Debentures are secured by a Land Deed of Trust secured by the Property.

Each of the Debentures provides that it shall bear interest at a fixed rate of 4% per annum and payable annually on March 1 of each year. (*Id.* ¶ 16). The interest installment due March 1, 2016 was not paid. (*Id.* ¶ 18).

On or about October 25, 2016, Plaintiffs other than John Hawley filed the 2016 Action to recover money owed by Diamondhead under the Debentures. (D.I. 1). On or about February 28, 2019, John Hawley brought an action against the Debtor in the Superior Court of the State of Delaware[3] ("the State Court Action" and together with the instant action, "the Prior Actions"). The Prior Actions sought to recover the amount of one million five hundred thousand dollars in principal plus interest thereon from Diamondhead owed under the Debentures.

On or about November 21, 2016, Diamondhead filed a motion to dismiss (D.I. 6) the 2016 Action case on the basis that, although the Complaint alleges that the Court has subject matter jurisdiction over this case based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(3),[4] the complaint failed to allege properly the citizenship of any of the nine Plaintiffs. (D.I. 7 (brief in support) ¶ 1). Diamondhead asserted that the J. Steven Emerson Roth IRA is not a proper plaintiff based on the fact that that the relevant debentures identify "Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA" as the Holder of the instruments. (*Id.* at 8). "Therefore, J. Steven Emerson Roth IRA, not having legal title to the Debenture, lacks standing to maintain an action, irrespective of diversity." (*Id.* at 9).

Plaintiffs' Amended Complaint (D.I. 22) asserted that J. Steven Emerson Roth IRA ("the IRA") was the holder of the Debenture pursuant to an assignment from Millenium Trust Company,

---

[3] *See* Case No. N19C-02-239 RRC (Del. Super. Ct.).

[4] Section 1332(a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3).

LLC ("the LLC") (*id*. at 2, n.1), as supported by a contemporaneously filed declaration (D.I. 13 ¶¶ 10, 11). Finding that it was "not permitted to look to the declaration in assessing the sufficiency of the Amended Complaint," however, this Court "granted [Diamondhead's] motion to dismiss with respect to the J. Steven Emerson Roth IRA," with "leave to amend to allow the Plaintiffs to file a Second Amended Complaint, in which they could incorporate as allegations the contentions contained in the [declaration]." (D.I. 20 at 7). On October 2, 2017, Plaintiffs filed their Second Amended Complaint, which stated that prior to the commencement of the 2016 Action, the LLC "assigned and transferred to J. Steven Emerson all of its right, title and interest in and to the Roth IRA," and that Mr. Emerson, a citizen of California, is the sole Assignee and beneficial holder of the Roth IRA and its assets," and accordingly, the IRA is a citizen of California. (D.I. 23 ¶¶ 7, 13). Diamondhead filed an answer to the Second Amended Complaint (D.I. 25) and thereafter did not challenge the assignment.

On September 27, 2018, Plaintiffs, including the IRA, filed a motion for summary judgment, and the brief in support (D.I. 40) ("the SJ Brief") which stated "[e]ach of the Plaintiffs is the holder of debentures owing to it by . . . Diamondhead . . .". (*Id*. at 2). Concurrently with the SJ Brief, Plaintiffs filed their Statement of Undisputed Material Facts, which listed the IRA as a Debenture holder. (*See* D.I. 41 ¶ 6). Diamondhead's response to the SJ Brief did not contest the IRA's status as a Debenture holder. (*See* D.I. 44). On June 4, 2019, the motion for summary judgment was denied. (*See* D.I. 56 ("the SJ Denial Opinion")). The SJ Denial Order states: "This Court **ADOPTS** Plaintiffs' Statement of Undisputed Material Facts (D.I. 41), which Defendant does not dispute." (*Id.* ¶ 3).

In December 2019, Plaintiffs, including the IRA, and Diamondhead entered into a settlement agreement (D.I. 84-2) ("the 2019 Settlement Agreement"). The 2019 Settlement Agreement was executed by Ms. Vitale on behalf of Diamondhead. As part of that Settlement Agreement, Diamondhead agreed that "for purposes of this Settlement Agreement only, ***the Holder of the***

***Debentures issued to Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA shall be deemed to be the J. Steven Emerson Roth IRA*.”  (2019 Settlement Agreement at 2 (emphasis added)).  The 2019 Settlement Agreement provided that, if no sale of the Property occurred on or before December 31, 2021, Plaintiffs (defined to include the IRA) “will be entitled to a Judgment” in the amounts set forth in the agreement, including principal due under the debentures, interest, and payment of reasonable attorneys’ fees to counsel for the Plaintiffs.  (*Id.* at § 5).  The 2019 Settlement Agreement, which was intended to fully resolve the dispute, required the plaintiffs in both Prior Actions—the 2016 Action and the action pending in the Superior Court of Delaware—to dismiss those actions, and required that “[t]he Stipulation of Dismissal in the [2016 Action] will provide that the federal court will maintain continuing jurisdiction over the Settlement Agreement.”  (*Id.*, § 8). The parties filed a Stipulation of Voluntary Dismissal with Prejudice in the 2016 Action on January 13, 2020, which contained the continuing jurisdiction provision.  (D.I. 67).

Diamondhead failed to make the payments required under the 2019 Settlement Agreement. Thereafter, the parties entered into an amendment to the 2019 Settlement Agreement (D.I. 68-2) (“the Amendment”), effective as of April 1, 2022, which provided that if the Plaintiffs were not paid in full by March 31, 2023, Plaintiffs were “authorized to enter the Consent Judgment against Defendant in the form annexed hereto.”  (*Id.* at §§ 1.1-1.3; *id.* at 14 of 24 (form of Consent Judgment)). Mr. Emerson, as Successor to the IRA, was listed as a Debenture Holder, and the Amendment was executed by Ms. Vitale on behalf of Diamondhead.  (*Id.* at 1).

In connection therewith, on April 13, 2023, Ms. Vitale wrote the following email to Jeffrey Wurst, Plaintiffs’ attorney, with the subject “Diamondhead: Emerson IRA” (“the Acknowledgement Email”):

> Jeff:
> I am doing the list of payees to be sure they match the Holders in the notes.

> For Emerson's IRA, you gave me "J. Steven Emerson, as Successor to Steven Roth IRA."
> However, there is no Steven Roth IRA in my documents.
> This name does not match the name of the IRA in my Debenture.
> I have fixed it. See the attached.
> Please have Steve sign the attached clean Acknowledgement.
> Deborah

(D.I. 84-3). Attached to the Acknowledgement Email were redline and clean acknowledgment forms from Ms. Vitale, to be executed by "J. Steven Emerson, as Successor to J. Steven Emerson Roth IRA (f/k/a Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA)", stating "**the amount necessary to pay, in full, the debt owed to J. Steven Emerson, as Successor to J. Steven Emerson Roth IRA (f/k/a Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA) by Diamondhead Casino Corporation which is secured by a Deed of Trust on real Property owned by Mississippi Gaming Corporation** located at 7051 Interstate 10, Diamondhead, Mississippi 39525, which is located in Hancock County, Mississippi, is $648,013.98" and authorizing "David A. Wheeler, Trustee, to cancel the Deed of Trust as to Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA upon the disbursement of the foregoing payoff to me." (*Id.*).

Mr. Emerson executed the acknowledgement form ("the Acknowledgment") on April 13, 2023, and Mr. Wurst sent the Acknowledgment, together with other documents, to Ms. Vitale. (D.I. 84-4). On April 14, 2023, Mr. Wurst again sent the Acknowledgment, together with other documents, to Ms. Vitale. (D.I. 84-5). No payment was ever received, so the Deed of Trust was never cancelled. After failing to reach further agreement with Diamondhead for the Plaintiffs' forbearance in July 2023, the Plaintiffs moved to reopen the 2016 Action, vacate the dismissal, and enter judgment on consent. (D.I. 68).

On September 20, 2023, this Court entered the Consent Judgment in favor of Plaintiffs, and against Diamondhead in the principal amount of $1,500,000, plus interest and $175,000 in attorneys' fees and costs. (D.I. 75).

In sum, Court did not adjudicate the 2016 Action on its merits; rather, the 2016 Action was dismissed with prejudice by stipulation of the parties and pursuant to the parties' own negotiated settlement agreements, executed in 2019 and 2022, neither of which were presented to the Court for its review or approval, together with the Consent Judgment which was also a product of the parties' out-of-court negotiations, entered at their request and upon their consent.

### C. The Involuntary Petition and the Motion to Dismiss or Convert

The Consent Judgment was not satisfied by Diamondhead. On June 12, 2024, Plaintiffs, as petitioning creditors, including Mr. Emerson as Successor to the IRA, filed an involuntary petition against Diamondhead. (Bankr. D.I. 1). On July 18, 2024, then-alleged debtor Diamondhead moved to dismiss the petition, or alternatively, to convert the case to a case under chapter 11. (Bankr. D.I. 9). The motion to dismiss or convert, and the declaration in support executed by Ms. Vitale, acknowledged that each petitioning creditor was a holder of one or more Debentures. (*See* Bankr. D.I. 9 at 3-4; Bankr. D.I. 9-1 ¶ 44). The parties conducted discovery and depositions. (Bankr. D.I. 18-21). A two-day evidentiary hearing on the Motion to Dismiss was held on December 4, 2024, and January 16, 2025. (Bankr. D.I. 27, 36). The Bankruptcy Court heard testimony from five witnesses and considered various exhibits admitted into evidence. (Bankr. D.I. 27, 36, 37). Post-hearing briefing was submitted. (Bankr. D.I. 38, 39, 40).

On July 30, 2025, the Bankruptcy Court issued an Order denying the motion to dismiss or convert (Bankr. D.I. 43) ("the July 30 Order"), accompanied by its thorough Opinion. Finding the statutory requirements of § 303(b) were met, the Bankruptcy Court entered the Order for Relief on July 31, 2025. (Bankr. D.I. 45). On August 1, 2025, George L. Miller ("the Chapter 7 Trustee") was

appointed as Chapter 7 Trustee of the Debtor's bankruptcy estate. (Bankr. D.I. 46). Ms. Vitale filed a notice of appeal with respect to the July 30 Order and Order for Relief (Bankr. D.I. 57) ("the First Vitale Appeal"), which remains pending.[5]

**D. <u>The Unauthorized Motions</u>**

On August 13, 2025, an attorney not retained or authorized by the Chapter 7 Trustee purported to file, on behalf of Diamondhead, a notice of appeal with respect to the Order for Relief (D.I. 50) ("the Unauthorized Appeal"), which was later withdrawn, together with a motion for stay of the Order of Relief pending the appeal (Bankr. D.I. 47) ("the Unauthorized Stay Motion"). The same unauthorized attorney purported to file, on behalf of Diamondhead, a motion to vacate, alter, or amend the Order for Relief and Opinion (Bankr. D.I. 48 (withdrawn) and Bankr. D.I. 63 (refiled)) ("the Unauthorized Motion") supported by a brief (Bankr. D.I. 49) and the declaration of Ms. Vitale (Bankr. D.I. 49-7). The Unauthorized Motion alleged that, despite purporting to hold two Debentures, Mr. Emerson as Successor to the IRA was not a creditor and lacked standing to file the involuntary petition under § 303(b)(1) because the registered record owner of the two Debentures is the LLC—Millenium Trust Company, LLC as Custodian FBO: J. Steven Emerson Roth IRA. (Bankr. D.I. 49 at 3-5). The Unauthorized Motion further argued that the LLC was not properly named as a plaintiff in the 2016 Action; rather, it alleged, the IRA was improperly named as plaintiff in order to manufacture diversity of citizenship for purposes of this Court's jurisdiction. Alleging that jurisdiction over the 2016 Action was lacking, the Unauthorized Motion further contended that the Consent Judgment underlying Plaintiffs' claims must be considered void *ab initio.* Finally, the Unauthorized Motion argued that the underlying Debentures are not a proper basis for any of the Plaintiffs to have filed the involuntary petition because the three-year statute of limitations has now

5 *Vitale v. Arneault*, *et al.,* C.A. No. 25-1022-MN.

run on all of the Debentures. Ms. Vitale's declaration in support of the Unauthorized Motion asserted that Diamondhead "did not know until after all the briefs were filed in this case that there was a discrepancy with respect to the Holders of the Debentures and the parties named as Petitioners in this bankruptcy case." (Bankr. D.I. 49-7 ¶ 26).

Ms. Vitale filed a motion seeking leave to intervene in the chapter 7 case (Bankr. D.I. 55) ("the Motion to Intervene") pursuant to Bankruptcy Rule 2018, which permits "an interested entity to intervene generally or in any specified matter" after hearing and upon a showing of cause. *See* Fed. R. Bankr. P. 2018(a). Ms. Vitale argued that the cause requirement was satisfied based on the impact that the July 30 Order and Order for Relief may have on her claims and equity interests. (*Id.* at 3). The Motion to Intervene "incorporate[d] by reference" the requests for relief and arguments contained in the Unauthorized Motion and Unauthorized Stay Motion but advanced no separate arguments. On August 28, 2025, Plaintiffs filed their objection to the motions. (Bankr. D.I. 77).

### E. The Bench Rulings

On September 3, 2025, the Bankruptcy Court heard oral argument on the various motions and ruled from the bench (Bankr. D.I. 92 ("Sept. 3, 2025 Hr'g Tr.") at 44-55 ("the Bench Ruling")).

#### 1. Standing

The Bankruptcy Court first addressed whether Diamondhead, as the alleged Debtor, and Ms. Vitale, as a creditor, had standing to pursue the various motions challenging the July 30 Order and the Order for Relief. With respect to the Unauthorized Stay Motion, the Bankruptcy Court noted that although section 303(d) of the Bankruptcy Code and Bankruptcy Rule 1011(a) permit the alleged debtor to contest an involuntary petition, at least one court has concluded that an alleged debtor does not have standing to seek a stay pending appeal of an order for relief once a trustee has been

appointed.[6] (*Id.* at 46 (citing *In re 461 7th Avenue Market, Inc.*, 623 B.R. 681, 691 (Bankr. S.D.N.Y. 2020) (holding that the chapter 7 "Debtor has no standing to seek a stay on its own behalf; rather, the application for a stay can be made only by the Trustee"))). As that case explains:

> "[O]nce appointed, the Trustee alone has standing to seek a stay on behalf of the Debtor. If the Court were to conclude otherwise and recognize that the Debtor had a right to pursue the instant application [for stay pending appeal]—over the Trustee's opposition—the result would strip the Trustee of her autonomy and force her to reckon with a duality of authority. This conclusion would defeat the very purpose of appointing a trustee in a Chapter 7 proceeding. On this point, the Court concludes that recognizing such a duality and forcing the Trustee to compete for control of the Debtor's legal rights cannot be squared with *Weintraub*'s rule that corporate officers are 'completely ousted' once a trustee has been appointed.

*In re 461 7th Avenue Market*, 623 B.R. at 691 (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352-53 (1985)). As part of its thorough analysis, however, and for purposes of evaluating the Unauthorized Motion seeking to vacate, alter, or amend the Order for Relief, the Bankruptcy Court assumed that, notwithstanding the appointment of the Chapter 7 Trustee, Diamondhead had retained the right to challenge the July 30 Order and Order for Relief. (Sept. 3, 2025 Hr'g Tr. at 46). With respect to Ms. Vitale's requests for relief, on the other hand, the Bankruptcy Court directly quoted the Third Circuit: "[i]t is well-established that a *creditor*, in contrast, does not have standing to contest an involuntary bankruptcy filing." (*Id*. (quoting *In re QDN LLC*, 363 F. App'x 873, 875-76 (3d Cir. 2010))). Thus, the Bankruptcy Court concluded that Ms. Vitale did not have standing to contest the involuntary petition through her joinder to the Unauthorized Motion and Unauthorized Stay Motion. (*Id.* at 46-47).

---

6 Arguably the same analysis applies to the Unauthorized Motion.

### 2. <u>The Unauthorized Motion</u>

Assuming for purposes of the Bench Ruling that Diamondhead had standing to file it, the Bankruptcy Court determined that the Unauthorized Motion "addresses the same issues that serve as the basis for the appeal; essentially, whether the Court erred in denying the motion to dismiss and entering the [O]rder for [R]elief." (*Id.* at 48). Accordingly, the Bankruptcy Court found that, "under the divestiture-of-jurisdiction rule this Court lacks jurisdiction to hear the motions to vacate the Court's opinion and order and dismiss the involuntary petition, or, alternatively, to alter and amend the opinion and orders, other than the issue raised with respect to eligible petitioning creditors, which the Court will address in the context of a stay motion." (*Id.* at 48-49).

### 3. <u>The Unauthorized Stay Motion</u>

Assuming, again, for purposes of the Bench Ruling, that Diamondhead had standing to file it, the Bankruptcy Court considered and denied the Unauthorized Stay Motion. (*See id.* at 48-55). The Bankruptcy Court found that the Debtor was not likely to succeed on the merits. Relevant here, the Bankruptcy Court addressed the sole argument raised by the Debtor to justify a stay pending appeal—the eligibility of Mr. Emerson, as successor to the IRA, to be a petitioning creditor. (*Id.* at 50). The Bankruptcy Court explained that Diamondhead, after filing its motion to dismiss the involuntary bankruptcy, conducted discovery and could have raised the issue at the evidentiary hearing on the motion to dismiss, but did not, nor did it raise the issue in post-trial briefing. (*Id.* at 50-51). Rather, the Bankruptcy Court noted, Diamondhead acknowledged that each of the petitioning creditors was a proper creditor. (*Id.* at 51). The Bankruptcy Court also noted that the IRA is a valid holder of the Consent Judgment against the Debtor, which judgment was executed by Diamondhead. (*Id.*). Thus, "[t]o the extent there was an issue, it should have been raised previously." (*Id.*). Moreover, the Bankruptcy Court found that this was not newly discovered evidence. (*Id.*). Rather, "[t]he parties acknowledge this alleged error has existed for years." (*Id.*).

"[F]inally," and "most critical for purposes of this ruling," the Bankruptcy Court found that "even if there is some infirmity with respect to J. Steven Emerson IRA's standing as a creditor of Diamondhead, and assuming for purposes of the pending motion he was disqualified, the alleged infirmity is immaterial because . . . there remain seven undisputed eligible petitioning creditors and only three . . . are needed to satisfy Section 303's requirements." (*Id.* at 51-52). As such, the Bankruptcy Court ruled that even if the IRA was disqualified, "the outcome of this Court's ruling would not change" because there remain a sufficient number of unchallenged creditors to satisfy the Bankruptcy Code's requirement for the number of petitioning creditors. (*See id.* at 52). Finding the alleged irreparable harms were speculative (*id.* at 53-55), the Bankruptcy Court denied the Unauthorized Stay Motion from the bench. On September 4, 2025, the Bankruptcy Court entered an order denying the Motion to Intervene and both unauthorized motions (Bankr. D.I. 89) ("the September 4 Order").

On September 17, 2025, Ms. Vitale filed a second notice of appeal (Bankr. D.I. 107),[7] which listed: (1) the July 30 Order, (2) the Opinion, (3) the Order for Relief, (4) the September 4, 2025 Order; and (5) the September 3, 2025 Bench Ruling.

**F. <u>The Motion to Vacate</u>**

On November 12, 2025, Ms. Vitale filed the Motion to Vacate the Consent Order in the instant 2016 Action, together with a declaration in support. (D.I. 81). The Motion to Vacate asserts essentially the same arguments asserted in the Bankruptcy Court: that the IRA was not the holder of record of the Debentures—rather the LLC was the holder of record—and that the IRA was listed as the holder of record in order to "fabricate diversity" and establish jurisdiction in this Court. (*See* D.I. 80 at 1). As to Plaintiffs' motivation, Ms. Vitale simply asserts that "the difficulty of

[7] *Vitale v. Arneault*, *et al.,* C.A. No. 25-1167-MN.

proving diversity for an LLC like Millenium explains why counsel for Plaintiffs in this case substituted the [IRA] for the LLC." (*Id*. at 19). Based on these assertions, Ms. Vitale argues that the Consent Judgment must be vacated, and because the applicable statute of limitations has run, all holders of the Debentures are now without recourse.

Plaintiffs oppose the Motion to Vacate on the basis that, pursuant to the 2019 Settlement Agreement executed by Ms. Vitale herself on behalf of Diamondhead, the parties agreed that "for purposes of this Settlement Agreement only, ***the Holder of the Debentures issued to Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA shall be deemed to be the J. Steven Emerson Roth IRA***." (D.I. 84 at 2). And it is the 2019 Settlement Agreement that formed the basis for the reopening of this case in 2023 and the entry of the Consent Judgment that Ms. Vitale now seeks to vacate. "In other words," Plaintiffs assert, far from being "newly discovered evidence, Diamondhead and Ms. Vitale were aware of the issue in 2016 and resolved it no later than 2019 in the parties' Settlement Agreement." (*Id*.). "Now facing the consequences of the [2019] settlement agreement that she voluntarily and willingly executed, as she no longer controls Diamondhead as a result of the Chapter 7 bankruptcy, Vitale desperately attempts to undo that which she agreed to." (*Id*.). As the issue of whether the IRA was a debenture holder and a proper party to the 2016 Action was litigated in the very action Ms. Vitale seeks to reopen, Plaintiffs urge the Court to deny the Motion to Vacate.

## II. <u>JURISDICTION</u>

Federal courts have an independent obligation to address issues of subject matter jurisdiction *sua sponte* and may do so at any stage of the litigation. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388-89 (3d Cir. 2002); *DeVary on behalf of B.D. v. Delaware Dep't of Educ.*, 2018 WL 1513019, at *2 (D. Del. Mar. 26, 2018). The Court has previously determined that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(3). (*See, e.g.,* SJ Denial Opinion ¶ 3 (adopting undisputed

material facts including that "Defendant is a corporation organized under the laws of the State of Delaware. Each of the Plaintiff's [sic] is a citizen of states other than the State of Delaware. Jurisdiction is proper in this Court" (D.I. 41 ¶ 1)); Consent Judgment ¶ A ("This Court has jurisdiction over the parties and the subject matter of this action."). Ms. Vitale is not a party to the 2016 Action or the Consent Judgment, and for the reasons set forth below, she lacks standing to assert any rights, interests, or causes of action belonging to Diamondhead's estate with respect to the Consent Judgment. The Court will strike the Motion to Vacate. Accordingly, the Court has no occasion to reopen the 2016 Action for any reason, including those asserted in the Motion to Vacate.

## III. <u>ANALYSIS</u>

### A. <u>Ms. Vitale Lacks Authority to Act on Behalf of Diamondhead</u>

Once appointed, a trustee "is the representative of the estate," with the "capacity to sue and be sued." 11 U.S.C. § 323. As observed by the Supreme Court:

> the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor. In contrast, the powers of the debtor's directors are severely limited. Their role is to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors. Congress contemplated that when a trustee is appointed, he assumes control of the business, and the debtor's directors are completely ousted.

*Weintraub*, 471 U.S. at 352-53 (1985) (internal citations and quotation marks omitted). "In short, '[o]nce appointed, the trustee assumes control over the debtor's entire estate and all such interests' and that 'control is not limited to the corporation's management. The trustee also assumes the sole power to prosecute legal claims on behalf of the debtor.'" *In re 461 7th Avenue Market, Inc.*, 623 B.R. 681, 689-90 (S.D.N.Y. 2020) (quoting *Quest Ventures, Ltd. v. IPA Mgmt. IV, LLC*, 2018 WL 922145, at *1-2 (E.D.N.Y. Feb. 15, 2018)).

Thus, upon Mr. Miller's appointment as Chapter 7 Trustee, Ms. Vitale was divested of any position of authority to act on behalf of Diamondhead. *See* 11 U.S.C. § 323(a); *In re C.W. Mining*

*Co.*, 636 F.3d 1257, 1260 (10th Cir. 2011) (following appointment of a chapter 7 trustee, the former management of a debtor lacked standing to appeal an adverse ruling on the debtor's behalf); *Log Furniture, Inc. v. Call*, 180 F. App'x 785, 787-88 (10th Cir. 2006) (unpublished) ("Moreover, the Code makes no provision within the structure of Chapter 7 for 'former management' to appear in the proceeding and attempt to control the property of the estate or assert a separate interest on behalf of the Debtor. The whole notion that the contrary is true is antithetical to the basic concept of a corporate liquidating bankruptcy under Chapter 7 of the Code."); *Bear Creek Trail, LLC v. BOKF, N.A. (In re Bear Creek Trail, LLC)*, 2021 U.S. Dist. LEXIS 160060, *6-7 (D. Wyo. Aug. 4, 2021) ("after the appointment of the Chapter 7 bankruptcy trustee, neither Debtor Bear Creek Trail's former management nor the attorney who has purportedly appeared in this appeal on behalf of Bear Creek Trail had legal authority to represent Bear Creek Trail's interest on appeal").

That only the Trustee has authority to act on behalf of Diamondhead and the estate is a contention that Ms. Vitale does not contest. (*See* D.I. 90 at 1-2).

**B. Ms. Vitale Lacks Standing to Assert Rights, Interests, or Causes of Action that Are Property of the Estate**

Ms. Vitale raises two arguments in opposition to the Motion to Strike. She argues that, by the Motion to Vacate, she seeks relief in her individual capacity, not on behalf of Diamondhead, and that she has standing to file the Motion to Vacate as Diamondhead's largest creditor, the sole trustee of Diamondhead's Employer Stock Ownership Plan, an equity holder, the sole employee of the Debtor, and as a "person aggrieved by reputational and financial harm." (D.I. 90 at 1-4). She further argues that the Motion to Vacate does not assert a cause of action belonging to the estate because it is not a "cause of action" but rather "a vehicle for invoking the Court's supervisory authority over its docket and prior orders." (*Id*. at 5). She further argues that, to the extent the Motion to Vacate is a cause of

action, the Chapter 7 Trustee's "actions constitute abandonment" of the cause of action. These arguments fail.

The Bankruptcy Code defines the "estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a), as well as "[a]ny interest in property that the estate acquires after the commencement of the case." *Id.* at 541(a)(7). This definition is given broad application and includes "all kinds of property, including . . . causes of action . . . ." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05 n.9 (1983). As the leading treatise explains, the debtor's interests in any such causes of action are included within the scope of section 541(a)(1). 5 Collier on Bankruptcy ¶ 541.07 (16th ed. 2026). "Property becoming part of the estate under section 541(a)(1) includes all rights of action the debtor may have arising from contract." (*Id.*). "Where a cause of action belonging to the debtor has been merged into judgment prior to bankruptcy, the estate succeeds to all rights under such judgment." (*Id.*). "Property of the estate includes causes of action about which the debtor was not aware prior to the bankruptcy petition." (*Id.*).

After a company files for bankruptcy, "creditors lack standing to assert claims that are 'property of the estate.'" *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164, 169 (3d Cir. 2002). "A cause of action that is 'property of the estate' is properly pursued by the bankruptcy trustee because it inures to the benefit of all creditors." *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014). "This promotes the orderly distribution of assets in bankruptcy, and comports with 'the fundamental bankruptcy policy of equitable distribution to all creditors that should not be undermined by an individual creditor's claim.'" *Id.* "If the cause of action belongs to the estate, the trustee has the exclusive standing to assert it." *Goldin v. Primavera Familienstiftung, TAG Assocs., Ltd. (In re Granite Partners, L.P.)*, 194 B.R. 318, 323-24 (Bankr. S.D.N.Y. 1996). "When the trustee has standing to sue, the automatic stay prevents creditors or shareholders from

asserting the claim notwithstanding that outside of bankruptcy, they have a right to do so." *McHale v. Alvarez (In re The 1031 Tax. Grp. LLC)*, 397 B.R. 670, 679 (Bankr. S.D.N.Y. 2008).

Even assuming there are grounds for Diamondhead to seek to reopen the 2016 Action and vacate the Consent Judgment, the right to assert such an action, claim, or interest belongs solely to the estate, and the Chapter 7 Trustee is the only party with standing to assert it. As the Third Circuit recently explained, "[claims] are property of the debtor's bankruptcy estate if the theory of liability is . . . based on an injury to the debtor corporation that resulted in secondary harm to all creditors. And in many cases, claims in the latter category are easy to identify because applicable non-bankruptcy law authorizes the debtor corporation to assert them outside of bankruptcy." *In re Whittaker Clark & Daniels,* 176 F.4th 241, 269 (3d Cir. 2026) (citations omitted); *see also In re Emoral,* 740 F.3d at 879 (explaining that property of the estate "includes" claims "the debtor could have asserted . . . on his own behalf under state law."). Any right of Diamondhead to challenge the Consent Judgment falls into this category. As the Chapter 7 Trustee has standing to assert such a claim, the automatic stay provision set forth in section 362(a) of the Bankruptcy Code[8] prevents creditors and shareholders like Ms. Vitale from asserting the claim, notwithstanding that outside of bankruptcy, she may have a right to do so. *In re Granite Partners,* 194 B.R. at 325.

### C. The Chapter 7 Trustee Has Not Abandoned Any Rights, Interests, or Causes of Action with Respect to the Consent Agreement

Ms. Vitale further asserts that the Chapter 7 Trustee's "actions constitute abandonment in fact." (D.I. 90 at 5). She asserts that the Chapter 7 Trustee abandoned any rights or interests the estate may have to seek to reopen and vacate the Consent Judgment, which she claims, without

8 11 U.S.C. § 362(a)(1) (prohibiting, *inter alia*, "the commencement ***or continuation***, including the issuance or employment of process, ***of a*** judicial, administrative, or other action or ***proceeding against the debtor that was*** or could have been ***commenced before the commencement of the case under this title***."

support, would necessarily lead to greater outcomes for creditors and equity holders. This argument fails for several reasons. The Chapter 7 Trustee has not abandoned any causes of action (or any other assets of Diamondhead), either formally or informally. Bankruptcy Section 554(a) states: "***After notice and a hearing***, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a) (emphasis added). The docket of the Chapter 7 case reflects that no notice of abandonment has been filed in the Bankruptcy Court, and Ms. Vitale points to no other informal representation that the Debtor's cause of action has been removed from the chapter 7 estate.

In the same vein, Ms. Vitale asserts that the Chapter 7 Trustee "has a duty to maximize the estate for the benefit of all creditors, both secured and unsecured creditors" and has "an affirmative duty to the estate to pursue the Motion [to Vacate] or to allow [Ms. Vitale] to do so unimpeded." (D.I. 90 at 6-7). "The fact that the trustee has failed to assert the cause of action does not of itself mean that the action has been abandoned, unless the cause of action was scheduled and was not administered when the estate was closed." 5 Collier on Bankruptcy ¶ 541.07 (16th ed. 2026). "As in the case of other assets of the debtor, the trustee is not bound to accept a burdensome right of action and pursue it to a litigious but unprofitable conclusion." *Id*.

Ms. Vitale is free to pursue any relief with respect to the Chapter 7 Trustee's fulfillment of his duties, or his alleged failure thereof, in the Bankruptcy Court overseeing the Chapter 7 proceedings. This argument does not change the fact that Ms. Vitale lacks standing to assert a right, interest, or cause of action belonging to the estate.

## IV. <u>CONCLUSION</u>

For the reasons set forth herein, the Motion to Strike will be granted. Accordingly, the Court does not consider the arguments presented in the Motion to Vacate. An appropriate order follows.